IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Timothy Churchill,<br>   Plaintiff<br><br>  v.<br><br>Marathon Petroleum Company LP,<br>   Defendant | )<br>)<br>)<br>)  **COMPLAINT**<br>)<br>)<br>) |

Comes now the Plaintiff, Timothy Churchill, by and through his attorney, Thomas D. Fiebiger, and for his Complaint alleges and states as follows:

1. Plaintiff Timothy Churchill (hereinafter "Churchill") at all times relevant was employed as a Maintenance Supervisor for Defendant Marathon Petroleum Company LP (hereinafter "Marathon").

2. Marathon is an employer located at 2972 G Street, Dickinson, North Dakota. Marathon is an employer under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. §2000e.

3. This court has jurisdiction pursuant to 28 U.S.C. §1331, federal question jurisdiction.

4. Churchill is asserting a claim of retaliation in violation of his right to equal opportunity and his opposition to discrimination and complaint of discrimination under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. §2000e-3(a).

5. Churchill had filed a charge of discrimination/retaliation with the U.S. Equal Employment Opportunity Commission, more than 180 days have passed since the filing of the charge, and he has complied with all administrative requirements.

6. In late summer/early fall of 2018, Mike Hutton, Marathon's Fleet Operations Senior Manager, came to Churchill's office and asked him why Marathon was spending so much money on Fastenal products out of Marathon's Sidney, Montana location. This was one of the locations Churchill managed. Churchill advised Hutton he was not aware of any

large purchases being made for the maintenance operation but that he would check.

7. Churchill had forgotten to check on it and a few weeks later Hutton again asked Churchill why Marathon was spending so much, elaborating that in comparison to other locations Marathon had been spending four times as much at the Sidney location.

8. Churchill followed up, contacting the mechanics at the Sidney location. Nathan Hull advised Churchill that he had not ordered anything from Fastenal for the Sidney location. Churchill then followed up with Joe DeAngelo, the other mechanic working out of the Sidney office and asked him if he had been placing large orders with Fastenal. DeAngelo said "No, I was going to give you a call because I received a phone call from Melanie, the Fastenal representative for our Sidney store." Melanie told DeAngelo that she won't return to the Sidney location to do another inventory because Tom Dufek, the Marathon trucking supervisor for the Sidney location, had been sending her inappropriate messages and inappropriate pictures and she did not feel safe to be there alone with him. Dufek was a peer of Churchill and they both reported to Hutton.

9. It became clear to Churchill that Dufek had been placing large orders with Melanie at Fastenal to ingratiate himself to her – and then he started sending her inappropriate and unwelcome messages and pictures. DeAngelo advised Churchill that Melanie was requesting to talk with someone at Marathon about this unwelcome harassing behavior.

10. At that point, Churchill ended his conversation with DeAngelo and called his supervisor, Hutton. Churchill reported to Hutton what DeAngelo had told him about the inappropriate and harassing actions of Dufek, as well as Melanie's concerns and distress.

11. Churchill heard nothing more from Hutton after reporting the harassment. However, several months after Churchill complained to Hutton about the sexual harassment of the Fastenal salesperson, he was placed on administrative leave for allegedly violating a company policy that did not exist.

12. Hutton told Churchill that Churchill was being placed on leave because he had been required to put two mechanics he supervised on a three-day suspension for violating Marathon's cell phone policy. However, the incident in question had been handled by Churchill exactly as his supervisor directed him to handle it.

13. When Churchill learned of the potential cell phone policy violation, he had never had to reprimand an employee for a cell phone issue and he turned to Jamie Kern, the Marathon Human Resources representative for transportation, for advice. Churchill specifically asked Kern if there was a policy requiring him to give the mechanics three days off for a policy violation. Kern advised Churchill that there was no disciplinary guideline in place that required Churchill to give them three days off and that he could just give them a written warning. Churchill did as he was instructed by HR and gave the mechanics written warnings.

14. Churchill was specifically told by Kern that there was no such policy and he followed Kern's advice and instructions.

15. When Churchill received a call from Jared Hanis, Senior Transportation Maintenance Manager for Marathon, advising him that he was being placed on administrative leave for not reprimanding the mechanics as per company policy by giving them three days off without pay, Churchill explained to Hanis that he had spoken with Kern, the HR person for Transportation, and advised Hanis of the content of that conversation.

16. Despite his conversation with Hanis and doing as his supervisor had instructed, Churchill was placed on administrative leave.

17. The reasons for Churchill's placement on administrative leave and being subject to discipline were manufactured by Marathon and in retaliation for Churchill's reporting of the sexual harassment of the female salesperson.

18. When Marathon put Churchill on administrative leave, they took away Churchill's company laptop, company cards, company vehicle and escorted him off the company property.

19. Hanis had spoken with a few of the mechanics Churchill supervised and assured them that this would not be grounds for Churchill's termination.

20. While out on administrative leave, Churchill still had access to his company email. During that time Churchill received the Marathon annual Code of Business Conduct email. That is an email sent to employees annually, giving Marathon employees the opportunity to report to the company any wrongdoing.

21. Churchill took the opportunity to file what he believed to be a confidential statement, reporting to the company that one of its trucking supervisors was a sexual harasser. Churchill relayed the above facts about what had happened to Melanie, the Fastenal salesperson and his reporting to his boss (Hutton) the facts as relayed to him by DeAngelo, including the fact that Melanie was sent inappropriate emails and pictures by a company manager, Dufek.

22. A few days after Churchill submitted his email statement to Marathon, he was advised by Hanis that Hanis would be flying in from San Antonio on Monday, January 28, 2019, and he wanted to meet with Churchill upon his arrival.

23. When Churchill arrived at Marathon's Dickinson, North Dakota office on January 28, 2019, Churchill had a conversation with Hutton. Hutton informed Churchill that Hanis was running a little late. As soon as Hanis arrived he informed Churchill that his employment with Marathon was being terminated because of the policy violation. Hanis asked Hutton if he had the paperwork for Churchill to sign and Hutton told him there was nothing. Churchill then stood up and left.

24. Churchill was retaliated against and fired for doing his job and reporting the sexual harassment/discrimination of one of Marathon's salespeople by one of Marathon's managers. The actions of Marathon were done in violation of 42 U.S.C. §2000e-3(a).

25. As a result of Marathon's illegal actions Churchill has sustained lost income, emotional distress damages, attorney's fees and court costs.

26. Churchill requests a trial by jury.

Plaintiff requests that judgment be entered as follows:

1. For Plaintiff's damages, including but not limited to, loss of earnings (past and future), benefits, emotional pain and suffering, mental anguish, humiliation and loss of enjoyment of life.
2. Prejudgment interest and interest on the judgment.
3. Costs, disbursements and expenses.
4. Attorney's fees as permitted by statute.
5. For such other and further relief as the Court deems just and equitable.

Dated this 14th day of October, 2020.

> BY: s/Thomas D. Fiebiger
> Thomas D. Fiebiger
> Fiebiger Law, LLC
> ND ID # 04190
> 6800 France Ave. S., Suite 190
> Edina, MN 55435
> 612.399.6474
> Attorney for Plaintiff